IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER AKINSEHINWA,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL NO. 1:CV-08-00395** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **JANINE DONATE,** | : | |
| | : | |
| **Respondent** | : | |

## M E M O R A N D U M

Christopher Akinsehinwa ("Akinsehinwa"), presently a detainee of the

United States Immigration and Customs Enforcement ("ICE") and incarcerated at

the York County Prison in York, Pennsylvania, filed the instant petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2241 on March 4, 2008, seeking release

from continued indefinite detention pending removal from the United States.  For

the reasons that follow, Akinsehinwa's petition will be denied.

## I.    Background

Akinsehinwa, a native and citizen of Nigeria, entered the United States on

or about January 21, 1979, as a B-2 visitor.  (Doc. 8-2 at 2.)  On April 14, 1986,

Akinsehinwa was granted lawful permanent resident status under § 245(a) of the

Immigration and Nationality Act (the "Act"), 8 U.S.C. § 1255(a), as amended.

Since Akinsehinwa's entry into the United States, he has committed a number of crimes, ranging from theft, assault and battery, to armed carjacking and kidnapping.  (*See* Doc. 8-2 at 3.)  In particular, on July 21, 1988, Akinsehinwa was convicted of obtaining money by false pretenses in the Circuit Court for Alexandria, Virginia, and sentenced to a term of imprisonment of one (1) year.  (Doc. 1 at 5.)  On January 1, 1991, Akinsehinwa was convicted of theft of under $300.00 in the Circuit Court for Prince Georges County, Maryland, and sentenced to a term of imprisonment of 181 days.  (*Id*. at 5-6.)

Based on these convictions, on April 9, 1991, ICE issued an order to show cause charging Akinsehinwa with having violated §§ 241(a)(2)(A)(i) and 241(a)(2)(A)(ii) of the Act, 8 U.S.C. § 1227, as amended, because he was convicted of crimes involving moral turpitude within five (5) years after entry, and sentenced to a term of imprisonment for a year or more.  (*Id*. at 29.)  An immigration judge ("IJ") conducted a deportation hearing, and Akinsehinwa was ordered removed to Nigeria based on the stated violations of the Act on October 4, 1991.  (*Id*. at 29-30.)  Subsequent to the removal order, Akinsehinwa moved to reopen his case based on ineffective assistance of counsel.  (*Id*. at 30.)  The IJ denied the  motion, and Akinsehinwa's timely appeal to the Board of Immigration

Appeals ("BIA") was dismissed on April 2, 1993. (*Id.* at 28-31.) On May 21,

1993, ICE released Akinsehinwa under an order of supervision. (*Id.* at 33.)

On April 4, 2000, Akinsehinwa was convicted of robbery with a deadly

weapon in the Circuit Court for the City of Baltimore, Maryland, and sentenced to

a term of imprisonment of ten (10) years. (*Id.* at 6.) On February 28, 2005, he

completed his state sentence and was immediately transferred into ICE custody.

(Doc. 8-2 at 11.)

Akinsehinwa was scheduled to be on a repatriation flight departing for

Nigeria on April 14, 2005. (*Id.*) However, prior to the flight, Akinsehinwa

informed the Nigerian Consulate that he is not a citizen of Nigeria; he is a citizen

of Ghana. (*Id.*) He explained to the Consulate that he was raised in Nigeria, but

did not have a birth certificate.[1] Akinsehinwa believed he was a Nigerian citizen

born to the Akinsehinwa's until September 1997, at which time a friend of his

mother's from Nigeria informed him that the Akinsehinwa's were not his natural

parents. (Doc. 1 at 7.) She told him that in fact he was not born in Nigeria, but

rather was born in Ghana to a Ghanian prostitute who died when Akinsehinwa was

---

[1] On October 16, 1980, Mr. and Mrs. Akinsehinwa signed declarations of age, indicating that their son, Petitioner, was born in Lagos, Nigeria, while Mr. Akinsehinwa was away from the home. (*See* Doc. 1 at 35-36.) As a result, Akinsehinwa's birth was not registered at the time, but was recorded in the Family Birth Register. (*Id.*)

seven years old.  (*Id.*)  Since his biological father was unknown, the

Akinsehinwa's adopted him.  (*Id*.)  After providing this information to the

Nigerian Consulate, Akinsehinwa was denied issuance of a travel document for his

removal to Nigeria and the flight was cancelled.  (*Id*.)

On June 1, 2005, Akinsehinwa sent a communication to the Nigerian

Consulate requesting that the Consulate forward his application for travel

documents to the Ghanian Consulate.  (*Id*. at 40.)  He did not contact the Ghanian

Consulate directly.  On June 30, 2005, ICE issued Akinsehinwa a "Warning for

Failure to Depart" and "Instruction Sheet to Detainee Regarding Requirement to

Assist in Removal."  (Doc. 8-2 at 12.)  Akinsehiwa was instructed to apply for a

travel document for his removal from the United States.  (*Id*.)

ICE scheduled Akinsehinwa for departure to Nigeria on a repatriation flight

on August 31, 2005.  (*Id*. at 13.)  However, prior to the flight, the Nigerian

Consulate again denied issuance of a travel document for Akinsehinwa after

interviewing him.  (*Id*. at 17.)  Akinsehinwa had again informed the Nigerian

Consulate that he was born in Ghana.  (*Id*.)

On September 21, 2005, ICE issued a "Notice of Failure to Comply"

pursuant to 8 C.F.R. § 241.4(g)(5)(ii), explaining that Akinsehinwa's removal

period was being extended and he will remain in ICE custody because he failed to

make timely and good faith efforts to obtain travel documents.  (Doc. 8-2 at 19-20.)

In August 2005, Akinsehinwa sought relief via a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of Maryland.  *See Akinsehinwa v. Devenyns*, No. WDQ-05-2366, 2005 WL 6049852 (D. Md. Oct. 13, 2005).  The court denied the petition, noting that Akinsehinwa had refused to cooperate with the efforts to remove him to Nigeria and that he had failed to contact the Ghanian Consulate after having been informed to contact that Consulate directly with respect to issuance of travel documents.  *Id.* at *2-3.  The United States Court of Appeals for the Fourth Circuit affirmed the district court's decision on March 29, 2006.  *Akinsehinwa v. Devenyns*, No. 05-7727, slip op. (4th Cir. Mar. 29, 2006).

On October 19, 2006, the Maryland District Court indicted Akinsehinwa under § 243(a)(1)(C) and § 237(a) of the Act, 8 U.S.C. §§ 1253(a)(1)(C), 1227(a), as amended, alleging that he "did connive, conspire, and take any action designed to prevent or hamper, or with the purpose of preventing or hampering, the alien's departure pursuant to such final order of removal."  *See United States v. Akinsehinwa*, Crim. No. 1:06-CR-00474 (D. Md. Oct. 19, 2006) (Doc. 1 at 82-83).  He was also charged with "knowingly and willfully ma[king] materially false,

fictitious, and fraudulent statements and representations, namely stating to Immigrations and Customs Enforcement deportation officers that he was not a citizen of Nigeria." (*Id*. at 83.)  As a result, Akinsehinwa was transferred to the custody of the United States Bureau of Prisons ("BOP") and the federal public defender was appointed as counsel.  (*Id*. at 86.)

Pursuant to a number of court orders directing Akinsehinwa to inform the court of his deportation status (*see id*. at 88), Akinsehinwa's counsel attempted negotiations with the Nigerian Consulate with respect to obtaining travel documents (*see id*. at 91, 93-94).  On September 5, 2007, Akinsehinwa's counsel informed the court that he and the cooperating United States Attorney had "exhausted every avenue for securing Mr. Akinsehinwa's deportation," but the Nigerian Consulate still refused to issue the travel documents.  (*Id*. at 96.)  As a result, the court granted the United States Attorney's motion to dismiss the indictment on September 10, 2007.  (*Id*. at 89.)  Akinsehinwa was returned to ICE custody on October 15, 2007.  (Doc. 8-2 at 2.)

On October 25, 2007, ICE issued a "Warning for Failure to Depart" to Akinsehinwa, noting that he had not been cooperative in securing the necessary travel documents.  (Doc. 1 at 100.)  The warning informed him that

§ 241(a)(1)(C) of the Act, 8 U.S.C. § 1231(a)(1)(C), as amended, provides for the

"extension of [the statutory removal period] if the alien refuses, during the

detention period, to make application in good faith, for a travel or other document

necessary for the alien's removal or departure or conspires or acts to prevent the

alien's removal subject to an order of removal." (*Id.*)  Thereafter, Akinsehinwa

was informed that ICE would conduct a further custody review on January 15,

2008.  (*See* Doc. 1-2 at 3.)

On January 18, 2008, after reviewing his custody status, including his

violent criminal history, ICE informed Akinsehinwa that it would continue to

detain him because he would pose a threat to the public and would be a flight risk

if released.  (*Id.* at 5.)  ICE also noted that it was currently working with the

Nigerian Consulate for the issuance of travel documents.  (*Id.*)  Further, it advised

Akinsehinwa that "you must demonstrate that you are making reasonable efforts to

comply with the order of removal, and that you are cooperating with ICE's efforts

to remove you by taking whatever actions ICE requests to effect your removal."

(*Id.*)

On April 18, 2008, a custody review was conducted by the Headquarters Post Order Detention Unit ("HQPDU" or "HQCMU"[2]).  (Doc. 12-2 at 2.)  Based on a review of his file record and a personal interview, HQCMU concluded that Akinsehinwa should not be released from ICE custody at that time.  (*Id*.)  HQCMU reasoned that the Nigerian Embassy had not denied him as a citizen and that "ICE is confident that a travel document will be issued and your removal will occur in the reasonably foreseeable future."  (*Id*.)  Akinsehinwa was also informed that the decision did not preclude him from presenting further evidence in the future in order to demonstrate a good reason why his removal is unlikely.  (*Id*.)  However, he was advised that "any willful failure or refusal on your part to apply in good faith for travel documents, or any actions or conspiracy on your part to obstruct the issuance of a travel document may subject you to criminal prosecution under 8 U.S.C. § 1253(a)."  (*Id*.)

II.    **Discussion**

This case is before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241.  Akinsehinwa seeks immediate release from ICE custody, arguing that Nigeria is not accepting him and that his indefinite detention

---

[2] HQCMU, or the Headquarters Custody Management Unit, is on the same administrative level and performs the same custody reviews as HQPDU.

is unconstitutional.  The court has jurisdiction over this matter pursuant to § 2241 and consistent with *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).

Detention, release, and removal of aliens ordered removed is governed by § 241 of the Act, 8 U.S.C. § 1231, as amended.  Under § 1231(a), the Attorney General has ninety days to remove an alien from the United States after his order of removal, during which time detention is mandatory.  The statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States.  It does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001); *see also* § 1231(a). "Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.  To establish uniformity in the federal courts, a period of six months was recognized as a "presumptively reasonable period of detention." *Id.* at 701.  If at the conclusion of the six month period the alien provides good reason to believe that there is no significant likelihood of deportation in the reasonably foreseeable future, the burden shifts to the government to "respond with evidence sufficient to rebut that showing." *Id.* Not every alien must be released after six months.  An alien may still be detained beyond six months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Following *Zadvydas*, regulations were promulgated to meet the criteria established by the United States Supreme Court.  *See* 8 C.F.R. § 241.4.  Prior to the expiration of the mandatory ninety day removal period, the district director of ICE shall conduct a custody review for an alien where the alien's removal cannot be accomplished during the prescribed period.  § 241.4(k)(1)(i).  When release is denied pending the removal, the district director may retain responsibility for custody determinations for up to three months, or refer the alien to the HQPDU for further custody review.  § 241.4(k)(1)(ii).  Once jurisdiction is transferred, an eligible alien may submit a written request for release to the HQPDU asserting the basis for the alien's belief that there is no significant likelihood that he will be removed in the reasonable foreseeable future.  8 C.F.R. § 241.13(d)(1).

In a custody review pursuant to § 241.13, HQPDU is provided with the following guidelines for determining whether removal is reasonably foreseeable:

> The HQPDU shall consider all the facts of the case including, but not limited to, the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.  Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be

accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

§ 241.13(f).

In the instant case, Akinsehinwa argues that he should be released under the terms described by the Supreme Court in *Zadvydas* because Nigeria will not accept him. As Respondent points out, however, Akinsehinwa's own actions caused Nigeria's unwillingness to accept him, since he reported to the Consulate that he is not a citizen of Nigeria, and is a citizen of Ghana. Thus, Akinsehinwa's inconsistent information has frustrated and delayed ICE's efforts to remove him.

It is well established that *Zadvydas* does not apply where a detainee who holds the keys to his freedom thwarts his removal by lying or refusing to cooperate with ICE. 8 U.S.C. § 1231(a)(1)(C); *Kovalev v. Ashcroft*, 71 F. App'x 919, 924 (3d Cir. 2003); *Pelich v. I.N.S.*, 329 F.3d 1057, 1061 (9th Cir. 2003). Section 241(a)(1)(C) of the Act, § 1231(a)(1)(C), as amended, states, in pertinent part,

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

Several district courts and one circuit court have considered failure to cooperate as an exception to *Zadvydas* pursuant to § 1231(a)(1)(C). The Ninth

11

Circuit Court of Appeals held that an "alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with the INS's efforts to remove him." *Pelich*, 329 F.3d at 1061.  In that case, the court determined that the continued detention of the alien was due to his own conduct: "[Petitioner] could likely effectuate his own removal (and free himself from detention) by providing the Polish government with the requested information.  It naturally follows that his detention is not destined to be indefinite." *Id*.  Thus, the Ninth Circuit has interpreted 8 U.S.C. § 1231(a)(1)(C) after *Zadvydas* to permit continued detention of a removable alien "so long as the alien fails to cooperate fully and honestly with officials to obtain travel documents." *Lema v. I.N.S.*, 341 F.3d 853, 857 (9th Cir. 2003).

Similarly, district courts considering this issue ask whether the petitioner has the "keys to his freedom," *Pelich*, 329 F.3d at 1060, to determine whether he is preventing his own removal pursuant to 8 U.S.C. § 1231(a)(1)(C). *See, e.g.*, *Clark v. Ashcroft*, No. 03-3320, 2003 WL 22351953 at *3-4 (E.D. Pa. Sept. 16, 2003) (alien initially misrepresented his country of origin, but later gave his true name and identity; the government showed no evidence of non-cooperation since that time); *Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 51-53 (D.D.C. 2002) (alien's truthful statements to Liberian officials that he did not wish to return to

Liberia did not amount to bad faith failure to cooperate since it was not the reason for failure to issue travel documents; rather it was their concern for his lack of ties to that country); *Powell v. Ashcroft*, 194 F. Supp. 2d 209, 210 (E.D.N.Y. 2002) (repeated inconsistencies regarding alien's identity "demonstrably hampered the INS in carrying out his removal").  Therefore, the court must carefully examine the record to determine Akinsehinwa's part in his continued detention.

It is undisputed that Akinsehinwa has provided inconsistent information regarding his nationality.  In 1979, Akinsehinwa entered the United States from Nigeria, with a Nigerian passport, which he now claims has been stolen.  (*See* Doc. 1 at 8.)  Notably, his Nigerian passport information is listed on a travel document application, including his passport number (#0086044), date and location of issuance (December 1978 in Lagos, Nigeria), and the passport's expiration date (August 31, 1983).  (*See* Doc. 1 at 46.)

Before he became a lawful permanent resident of the United States, Akinsehinwa's parents signed sworn declarations stating that Akinsehinwa was born to them in Lagos, Nigeria, on July 7, 1951.  (*See id*. at 35-36.) Akinsehinwa's parents died in January of 1997.  (*Id*. at 9.)  He claims that later that year he was informed by a family friend that he was adopted by his parents, and was actually born in Ghana to a Ghanian citizen who died in 1958.  (*Id*. at 7.)

However, the record contains neither a declaration from the friend in support of this claim, nor any efforts on Akinsehinwa's part to determine the veracity of the friend's claim.  In fact, there is no evidence in the record that Akinsehinwa is from any country other than Nigeria.

In support of its request for continued detention based on lack of cooperation, Respondent maintains that Akinsehinwa has not cooperated with ICE's efforts to secure travel documents from Nigeria by continually and knowingly sabotaging his telephonic interviews with the Nigerian Consulate. (Docs. 8 at 9, 8-2 at 16-17.)  Respondent also claims that ICE informed Akinsehinwa that he could contact the Ghanian Embassy himself in order to secure travel documents for repatriation to Ghana, but Akinsehinwa failed to do so.  (*Id*. at 12-13.)

Further, Respondent states that "ICE has been successful in repatriating aliens to Nigeria.  For example, . . . during Fiscal Year 2003, ICE deported a total of 505 aliens to Nigeria.  During Fiscal Year 2004, ICE deported a total of 398 aliens to Nigeria.  During the period October 2004 to April 2005, ICE has deported a total of 198 aliens to Nigeria.  These totals include both criminal and non-criminal aliens . . . ."  (*Id*. at 14.)

After careful review of the record, the court finds that Akinsehinwa has acted to prevent his removal within the meaning of 8 U.S.C. § 1231(a)(1)(C).  He has provided no evidence of his claim that he is not a Nigerian citizen, and in fact all evidence before the court indicates that he is a Nigerian citizen.  Further, Akinsehinwa has failed to meet his burden under *Zadvydas* of showing that removal is unlikely in the reasonably foreseeable future.  As noted above, repatriation flights to Nigeria are a regular occurrence.  His contention that Nigeria is not accepting him, and that his removal is not likely to occur in the reasonably foreseeable future has no support in the record.  In fact, Nigeria has not denied his citizenship (Doc. 12-2 at 2), and ICE is currently negotiating a travel document for his removal from the United States with the Nigerian Consulate (Doc. 1-2 at 5).  The court finds that the only barrier preventing Akinsehinwa's removal to Nigeria is Akinsehinwa himself.  Further, in its latest custody review HQCMU noted that it would accept from Akinsehinwa further evidence in the future demonstrating a good reason why his removal is unlikely.  (Doc. 12-2 at 2.)  Consequently, Akinsehinwa's detention is not contrary to federal law, and his petition will be denied.

## III.    <u>Conclusion</u>

For the above stated reasons, the petition for writ of habeas corpus will be

denied.  An appropriate order follows.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: July 30, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER AKINSEHINWA,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL NO. 1:CV-08-00395** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **JANINE DONATE,** | : | |
| | : | |
| **Respondent** | : | |

## **O R D E R**

Upon consideration of the petition for writ of habeas corpus (Doc. 1), and in

accordance with the accompanying memorandum, it is hereby ORDERED that:

1. The petition for writ of habeas corpus (Doc. 1) is DENIED.

2. The Clerk of Court is directed to CLOSE this case.


                                            s/Sylvia H. Rambo
                                            SYLVIA H. RAMBO
                                            United States District Judge

Dated: July 30, 2008.